```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
                       WESTERN DIVISION
```

Thomas Lincoln,                        )
                                       )
          Plaintiff,                   )
                                       )      Case No. 4:07-cv-424
     VS.                               )
                                       )
State of Arkansas et al.,              )
                                       )
          Defendants.                  )

### Memorandum Opinion and Order

Defendants State of Arkansas, the Arkansas Department of Correction ("ADC"), Larry Norris in his official capacity, and Sara McQuilliams in her official capacity have moved for summary judgment on Plaintiff Thomas Lincoln's ("Lincoln") claims under Title VII of the Civil Rights Act of 1964 and his related state law claim (doc. #20). For reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** the Defendants' motion.

**I.   FACTS**

Thomas Lincoln began working as a corrections officer for the Arkansas Department of Correction in January 2002 in Varner, Arkansas. Eight months later, the ADC allowed Lincoln to transfer to its Benton Unit so he could attend community college and be closer to his daughter. The Benton Unit is a work-release facility that houses approximately 325 inmates, many of whom work in jobs off prison grounds for private employers. Eight to

1

twelve inmates worked as van drivers to transport inmates to various work sites. Lincoln's primary duties as a correctional officer included performing surveillance of inmates, verifying correct counts, and maintaining logs of the inmates' movement and status.

On the evening of July 9, 2006, inmate van drivers Delancey and Sanders asked Acting Shift Supervisor Justin Corley whether they could drive the two vans scheduled to pick up inmates from the Affiliated Foods warehouse at 11:50 p.m. that evening. Corley agreed to the request, despite the run being previously scheduled for two other inmate drivers. Delancey and Sanders signed out at 11:30 p.m., approximately thirty minutes before Lincoln arrived at work. Upon his arrival at midnight, Lincoln relieved Officer Johnny Sheffield, who told him that Delancey and Sanders had made the Affiliated Foods van run and were expected back in approximately thirty minutes. Pursuant to Unit policy, the two officers "cleared the count" before Officer Sheffield left, whereby they physically counted the inmates present in the building and accounted for those who were out at work or elsewhere on Unit grounds. Although the next formal inmate count was not scheduled to take place until 4:00 a.m., the officers also conduct informal counts. Lincoln conducted informal counts by walking through the building approximately every half hour to count the inmates and monitor building activity. However, he did

not become concerned about the missing drivers until approximately 3:35 a.m. or 4:00 a.m.  Earlier, around 2:30 a.m., the first seven inmates from the group scheduled to be picked up by the van arrived at the building.

Upon his concern, Lincoln reported the matter to another officer, Shameka Giles.  Giles contacted the officers' supervisor that evening, Lieutenant Sterling Smith, at which point an emergency count was called.  Based on the Unit level and Internal Affairs investigations, Warden McQuilliams determined that Lincoln failed to perform one of his primary duties of maintaining accountability of the inmates assigned to him.  McQuilliams subsequently terminated Lincoln's employment after the incident, despite Lincoln's claims that he was not at fault for the escape.

The ADC learned during its investigation that the Unit Control Center operator Rollie Mullins also failed to recognize indications that the escapes were in progress.  Mullins, whose shift also began at midnight, was in control of the van keys and the van activity log.  At approximately 1:20 a.m., a supervisor from Affiliated Foods contacted the Control Center and requested that the inmates be picked up.  Mullins assumed this call was in reference to a smaller crew of inmates that worked later than the midnight run, so he sent another van driver to pick them up.  At approximately 1:30 a.m., the driver called the Control Center and

notified Mullins that another van would be necessary because there were too many inmates to fit in his van. Mullins sent another van driver to pick up the remaining inmates, although he did not realize that the vans driven by Delancey and Sanders were still gone until Giles called him later that morning.

Corley and Mullins were disciplined for unsatisfactory work performance with a five-day suspension and a twelve-month probationary period. The ADC asserts that their conduct is distinguishable from Lincoln's because he was terminated due to his inadequate work and his falsification of reports and refusal to recognize the gravity of his errors, whereas Corley and Mullins accepted responsibility for their errors. On October 17, 2006, Lincoln filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in which he alleged he was terminated because of his race and because he had testified in an ADC grievance hearing on behalf of Officer Giles about ten months earlier. He did not allege in this Charge that he was discriminated against due to his national origin. On January 12, 2007, the EEOC issued a Dismissal and Notice of Rights ("right to sue letter") to Lincoln. Lincoln subsequently filed a Complaint with this Court on April 13, 2007, which was later amended to allege discrimination by race and national origin in violation of Title VII of the Civil Rights Act of 1964. He also alleges retaliation after he testified on behalf of Giles at a grievance

hearing almost a year before his termination, as well as a supplemental state law tort claim of outrage.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper when the evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008).  The court views the facts in the light most favorable to the non-moving party, and it gives the non-moving party the benefit of all reasonable inferences.  McNary v. Schreiber Foods, Inc., 535 F.3d 765, 768 (8th Cir. 2008).  The court "does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue."  Tjernagel v. Gates Corp., 533 F.3d 666, 671 (8th Cir. 2008).  In employment cases, summary judgment should rarely be granted because the claims are inherently fact-based.  Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 871 (8th Cir. 2008).

### B.   Title VII Claims Against Employers

Title VII prohibits an "employer" from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Similarly, Title VII prohibits an "employer" from retaliating against an individual for opposing any unlawful

employment practice.  42 U.S.C. § 2000e-3(a).  The defendants first argue that, under Title VII, the only defendant amenable to suit is Lincoln's "employer", the ADC, and thus the claims against the remaining defendants should be dismissed.

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C. § 2000e(b).  The Eighth Circuit Court of Appeals has consistently held that "supervisors may not be held individually liable under Title VII."  Clegg v. Ark. Dep't of Corrs., 496 F.3d 922, 931 (8th Cir. 2007).  See also Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1147 (8th Cir. 2008) ("The district court properly granted summary judgment in favor of [the store manager] on the Title VII claim because that law does not provide for an action against an individual supervisor") (citing Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir. 1998).

In this case, defendants assert that the ADC is the only defendant that falls within Title VII's definition of "employer." The Court agrees.  Title VII claims against individuals in their official capacities are essentially claims against the employer, and thus it would be redundant for these individuals to remain as parties in this case.  Will v. Mich. Dep't of State Police, 491

U.S. 58, 71 (1989). Because the ADC is the only "employer" subject to suit under Title VII in this case, the parties named in their official capacities are dismissed from the case.

### C. National Origin Discrimination Claim

The ADC next argues that Lincoln's national origin discrimination claim is barred because he failed to raise it in his EEOC Charge. Before bringing a suit in federal court, a plaintiff alleging Title VII claims must exhaust his administrative remedies. Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). "The charge must be sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Id. (citing 29 C.F.R. § 1601.12(b)).

In Lincoln's Charge with the EEOC, he checked the boxes indicating "race" discrimination and "retaliation," but not the "national origin" discrimination box. He also wrote within his Charge, "I believe that I was terminated because of my race, black . . . I also believe that my termination was due to retaliation because I was a witness in a race/sex based grievance." However, Lincoln claims his national origin claim should stand because he was unrepresented at the time and he had difficulties with the English language. Furthermore, he claims that because the term "African-American" has become synonymous in our society with the term "Black American," it can be inferred that his intent was to put the defendants on notice of his race

7

and national origin claims.

Given the lack of notice and specificity in Lincoln's EEOC Charge, it is clear that he did not exhaust his administrative remedies with regard to his national origin claim. Fair v. Norris, 480 F.3d 865, 867 n.2 (8th Cir. 2007) ("Although an EEOC complaint need not specifically articulate the precise claim . . ., it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.") (citing Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1123 (8th Cir. 2006)). The EEOC form contained a "national origin" box, but Lincoln failed to check it. See Blakely v. Schlumberger Tech. Corp., No. 4:08-CV-04120-WRW, 2009 WL 385857, at *2 (E.D. Ark. Feb. 12, 2009) (dismissing plaintiff's claims where she failed to exhaust her administrative remedies by failing to check the "Gender" and "Disability" boxes on her EEOC form). While the Court liberally construes an administrative charge, it will not invent a claim which was not made. Cottrill, 443 F.3d at 635. Accordingly, the ADC's motion for summary judgment on Lincoln's national origin claim is **GRANTED**.

**D.   Race Discrimination Claim**

The Court now turns to Lincoln's race discrimination claim. Where there is no direct evidence of discrimination, claims are analyzed under the familiar burden-shifting framework set out in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the framework, the plaintiff must first establish a prima facie case of racial discrimination. McDonnell Douglas, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking action against the employee. Id. Once the employer articulates such a reason, the burden shifts back to the plaintiff to show the reason is merely a pretext for discriminatory animus. Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).

To establish a prima facie case of race discrimination, the plaintiff must prove that 1) he was a member of a protected class; 2) he was meeting his employer's legitimate job expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees outside the protected class were treated differently. Jackson v. United Parcel Service, 548 F.3d 1137, 1440 (8th Cir. 2008). In this case, the ADC primarily challenges Lincoln's ability to meet the fourth element of his prima facie case.

The test to show that similarly situated employees were treated differently is rigorous and "requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to the other employees." Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 (8th Cir. 2008). In Fields, which involved a race

discrimination claim for pay discrepancy, the Eighth Circuit enumerated several grounds that were inadequate for the plaintiff to show other employees were similarly situated to her. Id. First, employees who were hired pursuant to a new policy of paying outside hires higher salaries than those internally promoted were not similarly situated. Id. Second, employees who had more experience were not similarly situated to the plaintiff because they had received more salary adjustments over their longer work period. Id. Third, an employee who reported to a different decision-maker was not similarly situated. Id. See also Kight v. Auto Zone, Inc., 494 F.3d 727, 734 (8th Cir. 2007) ("When employees have been terminated by different decisionmakers, it would be rare for them to be considered similarly situated because any difference in treatment may well be attributable to nondiscriminatory reasons."). Finally, an employee who was actually paid less than the plaintiff was not similarly situated, and even if he was, the plaintiff suffered no adverse employment decision because that employee was paid less. Fields, 520 F.3d at 865.

In this case, Lincoln contends he is similarly situated to Corley and Mullins, both of whom are Caucasian and who were treated more favorably. The ADC claims that, while all three of the officers shared fault for the inmates' escape, Lincoln's conduct was distinguishable because the other employees admitted

their mistakes and "made clear to McQuilliams that they fully appreciated the gravity of their infractions."

The Court agrees with Lincoln. First, the Court notes that none of the concerns in <u>Fields</u> exist in this case to differentiate Lincoln from Corley and Mullins. Each employee reported to the same decision-maker, Warden McQuilliams. Moreover, all three employees engaged in misconduct of a similar level with regard to the escape. <u>Cf.</u> <u>Kight</u>, 494 F.3d at 734 ("Employees are not similarly situated if they have engaged in differing degrees of misconduct."). An argument could even be made that Corley and Mullins were more at fault than Lincoln for the escape. However, Lincoln's termination, compared with the mere five-day suspensions given to similarly situated employees Corley and Mullins, supports an inference of racial discrimination. <u>See</u> <u>Willnerd v. First Nat'l Neb., Inc.</u>, No. 07-3316, 2009 WL 635219, at *7 (8th Cir. Mar. 13, 2009)(holding that a production quota applied solely to the plaintiff and not to the similarly situated employees supported a reasonable inference that undercut the employer's claims that plaintiff was terminated based on performance concerns). Lincoln has thus met his prima facie case of race discrimination.

The ADC's arguments pursuant to the burden-shifting analysis are virtually identical to those discussed above, primarily that Lincoln was terminated for his inattentiveness and failure to

11

recognize the gravity of his errors.  According to the ADC, Lincoln cannot show that this legitimate, nondiscriminatory reason is pretext for discriminatory animus.  The Court disagrees.  Certainly, as the ADC repeatedly asserts, an employer "can choose how to run its business, including not to follow its own personnel policies regarding termination of an employee," but this is only true "as long as it does not unlawfully discriminate in doing so."  Richey v. City of Independence, 540 F.3d 779, 786 (8th Cir. 2008).  Lincoln may prove pretext, in part, by demonstrating "that similarly situated employees who did not engage in the protected activity were more leniently treated."  Fitzgerald v. Action, Inc., 521 F.3d 867, 872 (8th Cir. 2008).  In Fitzgerald, the Eighth Circuit held that the employer's more lenient treatment of a similarly situated employee, as compared with the termination of the plaintiff, supported a finding of pretext for discrimination.  Id. at 874.

The same result is true here, because a reasonable factfinder could infer that the ADC's termination was motivated not by their purported reasons, but by discriminatory animus. Fair, 480 F.3d at 869.  The termination of Lincoln, a black employee, combined with mere five-day suspensions for Corley and Mullins, two white employees who were arguably more at fault for the incident, certainly supports an inference of discriminatory animus.  The Court therefore **DENIES** the ADC's motion for summary

judgment on Lincoln's racial discrimination claim.

**E.    Retaliation Claim**

The ADC also moves for summary judgment on Lincoln's retaliation claim.  As with a discrimination claim, the Court applies the burden-shifting analysis for a retaliation claim in the absence of direct evidence of retaliation.  <u>Jackson</u>, 548 F.3d at 1142.  To establish a prima facie case of retaliation, the plaintiff must prove that 1) he engaged in a protected activity; 2) he suffered an adverse employment action; and 3) there was a causal connection between the protected activity and the adverse employment action.  <u>Id.</u>

In this case, Lincoln claims he was retaliated against for testifying in support of Officer Giles during an internal grievance hearing on October 18, 2005.  Officer Giles had alleged gender discrimination as a result of her not being promoted to Sergeant, and Lincoln testified that, while he did not feel that Warden McQuilliams had discriminated against Giles, he felt the Interview Board did discriminate.  Lincoln also alleges the ADC unlawfully retaliated against him by refusing to investigate his report that another officer treated him disrespectfully on the night of the escape by cussing at him.

The ADC begins its argument on the termination claim by conceding that Lincoln met the first two elements of his prima facie case, in that he engaged in protected conduct and his

termination constituted a materially adverse act.  However, it challenges the causal connection because Lincoln's termination occurred nearly a year after his testimony.  Regarding the investigation claim, the ADC claims that such conduct would not constitute a materially adverse act.  Lincoln failed to respond to either argument.

"Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established."  Van Horn, 526 F.3d at 1149. In this case, the Court believes that the nearly one year period from the protected conduct to the termination is too substantial to justify an inference of a causal connection.  Id. ("Though in rare circumstances an adverse action may follow so closely upon protected conduct as to justify an inference of a causal connection between the two, we have held that an interval of two months is too long to support such an inference.").  There being no other evidence to support the claim, it is clear that Lincoln's protected conduct in testifying was not a determining factor in the decision to terminate his employment.  Id. at 1150.

Furthermore, Lincoln's retaliation claim regarding the failure to investigate his report is insufficient because there was no materially adverse act, and thus he cannot meet the second element of his prima facie case.  Devin v. Schwan's Home Service,

14

Inc., 491 F.3d 778, 785 (8th Cir. 2007) ("The second prong is objective, requiring us to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions."). Notwithstanding the fact that the ADC asserts that it *did* investigate Lincoln's complaint, even if it had not, this would not be a materially adverse act because it would not dissuade a reasonable employee. Id.; Jackson, 548 F.3d at 1142-43. Accordingly, the Court **GRANTS** the ADC's motion for summary judgment on Lincoln's retaliation claims.

**F.     State Law Tort of Outrage Claim**

Lastly, the ADC claims that Lincoln's supplemental state law tort claim for outrage should be dismissed because the defendants are immune from suit in federal court. Lincoln failed to make any arguments in response to this issue.

The Eleventh Amendment bars suits brought by individuals against a state in federal court unless the state has consented to suit or Congress has unambiguously abrogated the state's immunity. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54-56 (1996). Neither of these exceptions apply in this case, as Arkansas has not waived its immunity, nor has Congress abrogated the State's immunity. Furthermore, this immunity extends to the ADC, which is a state agency that has "no separate identity" from the state "and thus cannot be stripped of it's [sic] official

15

character." Glick v. Henderson, 855 F.2d 536, 540 (8th Cir. 1988) (discussing the ADC's immunity in a civil rights case). Accordingly, the Eleventh Amendment bars the Court's jurisdiction over Lincoln's supplemental state law claim. Cooper v. St. Cloud State Univ., 226 F.3d 964, 968-69 (8th Cir. 2000); Reynolds v. Ark. Dep't. of Corrs., No. 5:07CV00168 JLH, 2008 WL 2857531, at *3 (E.D. Ark. July 21, 2008). Therefore, the state law claim must also be dismissed.

### G. CONCLUSION

The ADC is the only employer under Title VII and suits against parties in their official capacities would be redundant. Thus, the parties named in their official capacities are **DISMISSED** from the case. The Court **GRANTS** the ADC's motion for summary judgment on Lincoln's national origin discrimination claim, retaliation claims, and supplemental state law claim. However, viewing the facts in the light most favorable to Lincoln, there are genuine issues of material fact with regard to his racial discrimination claim. Accordingly, the ADC's motion for summary judgment on this claim is **DENIED**.

**IT IS SO ORDERED.**

Dated this 6th day of April, 2009.

_____
RODNEY S. WEBB, District Judge
United States District Court